# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **DANIEL J. TURRO,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **ADVANTA IRA ADMINISTRATION, LLC, and SUNTRUST BANKS, INC.,** <br><br> *Defendants.* | **CIVIL ACTION NO.** <br> **5:19-cv-00143-TES** |

## ORDER GRANTING DEFENDANT ADVANTA'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS*

Before the Court is Defendant Advanta IRA Administration, LLC's ("Advanta") Motion to Dismiss for *Forum Non Conveniens*, or, in the alternative, to Transfer Venue [Doc. 26]. For the following reasons, the Court **GRANTS** Advanta's Motion.[1]

## FACTUAL BACKGROUND

Plaintiff Daniel Turro opened a retirement account with Defendant Advanta. *See* [Doc. 19 at ¶¶ 7–10]. On July 31, 2018, Turro initiated two electronic funds transfers, attempting to transfer more than $140,000 from his Advanta Individual Retirement Account ("IRA") to his business accounts held at Wells Fargo. [*Id.* at ¶¶ 10–12]. Because the transfers did not process correctly, an Advanta employee sent an email to Turro

---

[1] As a result, the Court **DENIES** Advanta's alternative Motion to Transfer Venue [Doc. 26] **as moot**.

explaining that the transfers did not go through. [*Id.* at ¶ 13]. But a hacker remotely intercepted that email. [*Id.* at ¶ 14]. Posing as Turro, the hacker then instructed Advanta's employee to modify the transfers by sending them to the hacker's account at a completely different financial institution. [*Id.* at ¶ 14, 21]. Turro alleges that Advanta failed to follow its own procedures and policies regarding electronic transfers so that it should replace the $140,000 stolen by the hacker. Now, Advanta seeks dismissal from this case pursuant to the doctrine of *forum non conveniens* and, to support its Motion, directs the Court to a forum-selection clause in Turro's IRA contract requiring all litigation to take place in the District Court of Johnson County, Kansas, which is—to no one's great surprise—Advanta's hometown.

When Turro initiated his financial relationship with Advanta, he signed a formal application for an IRA. [Doc. 36-2]. Pursuant to this application, Turro acknowledged that he received a copy of a Custodial Agreement and Disclosure Statement, along with other documents that outline and govern the terms and conditions of the relationship. [Doc. 36-2 at p. 4]; *see also* [Doc. 26-2]. Critical to this case, the first page of the Disclosure Statement contains the following provision:

> Any lawsuit filed against or by Custodian or Administrator shall only be instituted in the district or county courts of Johnson County, Kansas, where Custodian maintains its principal office, and Depositor agrees to submit to such jurisdiction both in connection with any such lawsuit which Depositor

2

may file and in connection with any lawsuit which Custodian or Administrator may file against Debtor.[2]

[Doc. 26-2 at ¶ 9.1]. Additionally, the Disclosure Statement provides that the agreement "is subject to all applicable federal laws and regulations and shall be governed by and construed under the applicable laws of the state of Kansas[.]" [*Id.*].

By way of their Amended Complaint [Doc. 19], Plaintiffs acknowledge the fact that Advanta seeks enforcement of this forum-selection clause so that litigation will take place in Kansas. [Doc. 19 at ¶ 7]. Potentially, in an effort to evade any "*forum non convenines*" related argument that might be—and was, in fact—renewed in a subsequent motion to dismiss by Advanta, Plaintiffs allege that "if forced to litigate in Kansas," they "would be seriously inconvenienced, financially and otherwise[.]" [*Id.*].

## DISCUSSION

### A.    Standard of Review for Dismissal Based on *Forum Non Conveniens*

When seeking dismissal under the doctrine of *forum non conveniens*, the movant "must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) (quoting *Leon v. Millon Air,*

---

[2] The Court notes that district courts "are the trial courts of Kansas," so this clause permits lawsuits only in the district court of Johnson County, Kansas. Kansas Judicial Branch, http://www.kscourts.org/kansas-courts/district-courts/default.asp (last visited Oct. 31, 2019).

3

*Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001)); *see also Atl. Marine Const. Co. v. U.S. Dist Court for the Western Dist. Of Texas*, 571 U.S. 49, 60 (2013) (explaining that in cases in which the transferee forum is still within the federal system, 28 U.S.C. § 1404(a) "is merely as codification of the doctrine of *forum non conveniens*" meant to replace the traditional remedy of outright dismissal with transfer). According to the Supreme Court, when there is an enforceable forum-selection clause, that clause should carry "near-determinative weight" when analyzing dismissal for *forum non conveniens*. *GDG Acquisitions*, 749 F.3d at 1028 (citing *Atl. Marine Const. Co*, 571 U.S. at 64). Specifically, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* (quoting *Atl. Marine*, 571 U.S. at 64). This waiver inevitably leads to the conclusion that "[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting." *Atl. Marine*, 571 U.S. at 64 (alterations in original).

This Order will focus on three main issues. First, and crucial to the "*forum non conveniens*" analysis, the Court considers the enforceability of the parties' forum-selection clause. *GDG Acquisitions*, 749 F.3d at 1028–29. Second, the Court will consider the significance of the clause and why it supports the selected forum. Finally, the Court

will discuss why Defendant SunTrust should not be bound by the forum-selection clause at issue.

1. <u>Enforceability of the Forum-Selection Clause</u>

In an attempt to sever Advanta's dismissal arguments under what has become known as the *Bremen* analysis, Plaintiffs contend that because there is "no admissible evidence in the record regarding Advanta's claimed selection clause," the "Court has no evidence in which to rely," and Advanta's Motion should therefore, be denied. [Doc. 26-1 at pp. 4–10]; [Doc. 31 at p. 6]. However, when attachments to a motion to dismiss are central to and pertain to documents referenced in a pleading, here Plaintiffs' Amended Complaint, district courts are allowed to consider them without converting the dismissal motion into one for summary judgment. *Harvin v. JP Morgan Chase Bank, N.A.*, No. 1:15–CV–04477–MHC–JFK, 2016 WL 9450467, at *5–6 (N.D. Ga June 28, 2016); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("[T]he [C]ourt may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to [a plaintiff's] claim and (2) undisputed.")). "Undisputed," in this context simply "means that he authenticity of the document is not challenged." *Day*, 400 F.3d at 1276 (citation omitted).

Here, Plaintiffs took issue with the documents discussed in Advanta's brief in support of its Motion to Dismiss and ostensibly disputed the documents as inadmissible

5

based on lack of authentication, completeness, and foundation. [Doc. 31 at p. 6]; *see also* [Doc. 26-2]; [Doc. 26-3]. Advanta, however, in its Reply and out of "an abundance of caution" filed the complete IRA Application and an affidavit to properly authenticate and lay the foundation for the documents relied upon in its Motion. [Doc. 36 at pp. 4–5]; *see also* [Doc. 36-1]; [Doc. 36-2]. Following the inclusion of the complete IRA Application and the authenticating affidavit, Advanta suggests that Plaintiffs' arguments regarding the Court's ability to consider documents that are central to and directly pertain to Plaintiffs' Amended Complaint are now moot. The Court agrees, and it will consider the complete IRA Application [Doc. 36-2] when executing its *Bremen* analysis.

To begin, "[f]orum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Intern. Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991)); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). Using the *Bremen* factors, a plaintiff can overcome this presumption and invalidate the clause when: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Krenkel*, 579 F.3d at 1281 (citation omitted).

With regard to the first factor—fraud or overreaching—"a plaintiff must specifically allege that the clause was included in the contract at issue because of fraud." *Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1236 (11th Cir. 2011) (citing *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998)). When making a determination as to whether there was fraud or overreaching in a non-negotiated forum-selection clause, such as in an adhesion contract, the Court will "look to whether the clause was reasonably communicated to the consumer." *Krenkel*, 579 F.3d at 1281. And this level of "reasonable communicativeness" is guided by a two-part test, taking into account (1) the clause's physical characteristics and (2) a plaintiff's "ability to become meaningfully informed of the clause and to reject its terms." *Id*.

Here, Plaintiffs did not make the required "strong showing" that Advanta included the forum-selection clause in their contract because of fraud. Although Plaintiffs allege that they were in an unequal position of bargaining power and felt they did not have the opportunity to negotiate the agreements, Plaintiffs fail to allege any facts in their Amended Complaint that would point towards any fraud or deceptive behavior by Advanta. *See* [Doc. 19 at ¶ 7]. Additionally, Advanta printed the forum-selection clause in the same size font as the rest of the Disclosure Statement, which would indicate that the clause was not hidden. *See Stephens v. Entre Comput. Cntrs., Inc.*, 696 F. Supp. 636, 641 (N.D. Ga. 1988) (finding that a forum-selection clause was neither hidden nor fraudulent when the clause was "printed in the same type as the rest of the

document"). Plaintiffs had the opportunity to seek legal counsel to review the contract in order to become meaningfully informed of its contents, but nevertheless, Turro acknowledged receipt of the forum-selection clause when the Disclosure Statement was incorporated into the IRA application. *See* [Doc. 36-2 at p. 4]. Although Plaintiffs may not have had an opportunity to reject the forum-selection clause and still enter into a contract with Advanta, they certainly had the opportunity to reject the contract and choose another financial company that would not have required them to litigate in Kansas.[3] Thus, the first factor weighs in favor of enforcing the forum-selection clause.

The second factor for the Court to consider is whether a plaintiff would be deprived of its day in court because of inconvenience or unfairness. The Eleventh Circuit Court of Appeals has consistently explained that "[t]he financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid [forum-selection] clause." *Rucker*, 632 F.3d at 1237 (quoting *P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003)). If litigating in a certain forum at the time of contracting was foreseeable, a "plaintiff must show that litigating 'in the contractual forum will be so gravely difficult and inconvenient that he

---

[3] Most notably, as Advanta points out, "Plaintiffs appear to concede" that the fraud or overreaching factor cannot be met, because "they make no attempt to argue that the forum-selection clause in the Custodial Agreement was produced or 'induced by fraud or overreaching.'" [Doc. 36 at p. 11 (citing [Doc. 31 at pp. 15–16])].

will for all practical purposes be *deprived of his day in court*.'" *Rucker*, 632 F.3d at 1237 (emphasis in original) (quoting *M/S Bremen*, 407 U.S. at 17–18).

Plaintiffs' sole allegation in the Amended Complaint concerning this factor simply says that they " . . . would be seriously inconvenienced, financially and otherwise, if forced to litigate in Kansas." [Doc. 19 at ¶ 7]. Such a self-serving statement is simply insufficient to meet the second factor.

First, financial difficulty, standing alone, is never legally sufficient to allow a court to refuse to enforce a forum-selection clause. *See Rucker*, 632 F.3d at 1237. Second, Plaintiffs should have foreseen that it was possible (if not probable or even certain) that they would be forced to litigate in Kansas if a legal dispute arose. Turro signed the initial contract and acknowledged receiving the Disclosure Statement containing the forum-selection clause at issue, and it unequivocally explained that any and all suits would be litigated in Kansas. [Doc. 36-2 at p. 4]. While Plaintiffs assert they will be financially inconvenienced if the Court requires them to honor their contract, such inconvenience is a far cry from being "deprived of their day in court." Consequently, the second factor does not support the Court's refusal to enforce the parties' forum-selection clause.

Under the third factor, the Court will not enforce a forum-selection clause if "the chosen law would deprive the plaintiff of a remedy." *Krenkel*, 579 F.3d at 1281. As the Eleventh Circuit Court of Appeals has stated, deprivation of a remedy does not mean

9

that courts will invalidate a choice clause "simply because the remedies available in the contractually chosen forum are less favorable than those available in the courts of the United States." *Lipcon*, 148 F.3d at 1297. Instead, courts "will declare unenforceable" such clauses only when "the remedies available in the chosen forum are so inadequate that enforcement would be fundamentally unfair." *Id*.

Plaintiffs failed to show that the third factor supports non-enforcement of the forum-selection clause. In their Response to Advanta's Motion to Dismiss, Plaintiffs argue that enforcement of this forum-selection clause would "deprive . . . Plaintiff[s] of [their] rights pursuant to the [Electronic Funds Transfer Act ("EFTA")]." [Doc. 31 at p. 13]. Not so. The Plaintiffs failed to articulate any authority, statutory or otherwise, demonstrating that a Kansas state court (or any state court for that matter) could not apply federal law in a state forum.[4] Thus, the Court finds that the third factor also fails to support non-enforcement of the clause, because there is nothing preventing Plaintiffs from filing an identical cause of action in Kansas state court.

Finally, a forum-selection clause "is unenforceable under the fourth factor if 'enforcement of the clause would contravene public policy.'" *Rucker*, 632 F.3d at 1237 (quoting *Krenkel*, 579 F.3d at 1281). On this factor, Plaintiffs mistakenly argue that a

---

[4] Even assuming that the EFTA did not apply in state courts, this argument would still fail. It does so because Plaintiffs would still have tort theories available, which are not "so inadequate" compared to remedies under the EFTA "that enforcement of the clause would be fundamentally unfair." *See Lipcon*, 148 F.3d at 1297.

Kansas district court is not a court of competent jurisdiction, so that the forum-selection clause is "an impermissible 'writing or other agreement' seeking to waive a right conferred by the EFTA." [Doc. 31 at p. 12–13]. Pursuant to 15 U.S.C. § 1693*l*, "[n]o writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter." As Advanta correctly argues, the forum-selection clause merely requires Plaintiffs to file their lawsuit "in the district or county courts of Johnson County, Kansas[.]" [Doc. 36 at p. 9]; *see also* [Doc. 26-2 at ¶ 9.1]. Plaintiffs may still pursue all of their claims under the EFTA in that court, so the forum-selection clause does not constitute a waiver of Plaintiffs' ability to bring their EFTA claims. Thus, Plaintiffs failed to show that enforcement of this forum-selection clause would be a waiver of Plaintiffs' EFTA rights or otherwise contravene public policy.

To recap, Plaintiffs failed to overcome the presumption that the forum-selection clause is valid and enforceable. They did not make the requisite strong showing that enforcement of the clause would be unfair or unreasonable under the circumstances of this case. Therefore, the forum-selection clause is valid and enforceable against Plaintiffs.

2. <u>Application of *Forum Non Conveniens* Analysis</u>

Having found the forum-selection clause valid and enforceable, the Court must now consider it in connection with a *forum non conveniens* analysis. *GDG Acquisitions*,

11

479 F.3d at 1029. To reiterate, when a party seeks dismissal under the doctrine of *forum non conveniens*, it must show that an adequate alternative forum is available, that the public and private factors weigh in favor of dismissal, and that the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. *Id.* at 1028.

First, the district or county courts of Johnson County, Kansas, are an adequate alternative forum for this lawsuit. The Court has already rejected Plaintiffs' arguments that enforcing the forum-selection clause would deprive them of their remedies under the EFTA or would constitute an impermissible waiver of their rights. *See* Section (A)(1), *supra*. Moreover, Plaintiffs fail to assert any other arguments why the selected forum is not an adequate and available alternative forum. Thus, the Court easily concludes that the district or county courts of Johnson County, Kansas, are both an adequate and available forum.

Second, the public and private factors weigh in favor of dismissal. As previously stated, the Supreme Court has explained that where "parties agree to a forum-selection clause," as the parties have done in this case, "they waive the right to challenge the preselected forum," and a court must deem the private-interest factors to weigh entirely in favor of the preselected forum." *GDG Acquisitions*, 749 F.3d at 1028 (quoting *Atlantic Marine*, 571 U.S. at 64). Consequently, the Court may—at this juncture—only consider arguments about the public-interest factors. *Id.*

With regard to those factors, they "may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Here, there is no overarching local interest in having this controversy decided in the Middle District of Georgia. This case arises out of the remote interception of an email and "stolen" electronic banking transfers that could hardly be considered "localized" in this area. *See* [Doc. 19 at ¶¶ 14, 21]. Also, Plaintiffs originally filed the case in this court, invoking its federal-question jurisdiction rather than its diversity jurisdiction. [Doc. 19 at ¶ 1]. Under the contract, Kansas law will govern the dispute, because the Disclosure Statement provides that it is "subject to all applicable federal laws and regulations and shall be governed by and construed under the applicable laws of the state of Kansas." *See* [Doc. 26-2 at ¶ 9.1]. Given that courts in Kansas are more familiar with Kansas law and there is no local interest in having this controversy decided here, the Court holds that the public interest factors also weigh in favor of dismissal.

Third, Plaintiffs have offered no reason why they cannot reinstate their suit in the district or county courts of Johnson County, Kansas, without undue inconvenience or prejudice. Aside from Plaintiffs' amorphous argument that they would be "seriously" inconvenienced if forced to litigate in Kansas, Plaintiffs failed to articulate any reason

13

why they could not reinstate their suit without undue inconvenience or prejudice. [Doc. 19 at ¶ 7]. Accordingly, the Court finds this factor to weigh in favor of dismissal as well.

The Court holds that the *forum non conveniens* analysis requires dismissal of this case against Advanta from this court so that it may be refiled in the respective courts of Johnson County, Kansas. However, as discussed below, the Court does not agree that the forum-selection clause is binding on Defendant SunTrust.

3. Applicability of the Forum-Selection Clause to SunTrust

Advanta argues that the forum-selection clause should apply to all parties, including SunTrust, regardless of whether they actually signed the contract. *See* [Doc. 36 at pp. 7–8 (quoting *Stephens v. Entre Comput. Ctrs., Inc.*, 696 F. Supp. 636, 637–39 (N.D. Ga. 1988))]. For the following reasons, the Court holds that SunTrust is not bound by the forum-selection clause.

For a non-party to be bound by a forum-selection clause, "the party must be 'closely related' to the suit such that it becomes 'foreseeable' that it will be bound." *Lipcon*, 148 F.3d at 1299 (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)). In *Lipcon*, the Eleventh Circuit Court of Appeals affirmed a forum-selection clause as binding on two non-signatory parties. 148 F.3d at 1299. In doing so, the *Lipcon* court noted that because the two non-signatory parties were the two signatory parties' spouses "the interests of the spouses in this dispute [were] completely derivative of

14

those of the Name plaintiffs—and thus 'directly related to, if not predicated upon' the interests of the Name plaintiffs[.]" *Id.*

*Hugel v. Corporation of Llyod's* is a case from the Seventh Circuit Court of Appeals relied upon by the Eleventh Circuit involving two non-signatory corporations that were bound by a forum-selection clause between Hugel and Lloyd's of London. 999 F.2d at 210. In that case, Hugel was a member of the Corporation of Lloyd's. *Id.* at 207. He owned 99% of an insurance brokerage firm that owned 100% of the other non-signatory corporation's stock, and he served as president and chairman of the board of both corporations. *Id.* at 209–10. The subject of *Hugel* involved alleged breaches of confidentiality stemming from an investigation by Lloyd's into Hugel's business practices. *Id.* at 207. Hugel, and his two corporations, claimed that Lloyd's investigation and breach of confidentiality caused a business loss. *Id.* Hugel's two corporations asserted that "only Hugel [was] bound by" the forum-selection clause in the contract that he signed obligating him to "be bound by Lloyd's membership regulations." *Id.* at 209.

Nevertheless, the *Hugel* court found that "[t]he alleged assurances of confidentiality were made to Hugel alone and Hugel alone decided that his corporations would participate in Lloyd's investigation." *Id.* at 210. Given that it was Hugel who "supplied information belonging to those corporations[,]" the Seventh

Circuit Court of Appeals held that the non-signatory corporations were "so closely related to the dispute that they are equally bound by the forum selection clause[.]" *Id*.

Here, SunTrust could not reasonably foresee that it would be bound by the forum-selection clause agreed upon by Turro and Advanta. SunTrust is not closely related (or controlled) by either party, it is not a party to the contract, and its interests in this lawsuit are not "directly related to, [or] predicated upon" Plaintiffs' interests. *See Hugel*, 999 F.2d at 210; *Lipcon*, 148 F.3d at 1299. To be sure, the only reason SunTrust is a party to this particular lawsuit is because an unknown hacker intercepted Turro's email and caused $140,000 worth of stolen money to be deposited into a fraudulent SunTrust account. *See* [Doc. 19 at ¶¶ 14, 21]. In sum, nothing about the relationship between SunTrust and the other parties shows that it would be reasonably foreseeable that SunTrust could be required to litigate a lawsuit in Kansas that involves a Georgia customer who had his money stolen by an unknown hacker from anywhere in the world.

Based on the foregoing, the Court finds that SunTrust is not bound by the forum-selection clause, because it is not so closely related to the parties in this lawsuit such that it would be foreseeable that it would be bound by Plaintiffs and Advanta's contractual agreement. Accordingly, the Court declines to require SunTrust to defend this suit in Johnson County, Kansas.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Advanta's Motion to Dismiss for *Forum Non Conveniens* [Doc. 26] and **DIRECTS** the Clerk of Court to **TERMINATE** Advanta as a defendant in this case.

**SO ORDERED**, this 5th day of November, 2019.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
